COMMONWEALTH vs. CHARLES H. PARKER.

No. 87-1150.

Berkshire.  March 15, 1988. — April 27, 1988.

Present: DREBEN, CUTTER, & KASS, JJ.

*Assault and Battery by Means of a Dangerous Weapon. Intent. Practice, Criminal,* Instructions to jury.

At the trial of two indictments for assault and battery by means of a dangerous weapon, in which the defendant claimed that the victim was injured accidently, there was no error in the judge's instruction to the jury, based on *Commonwealth* v. *Bianco,* 388 Mass. 358 (1983), that if by a wrongful act a person creates in another's mind an immediate sense of danger which causes the other to try to escape and in so doing he injures himself, then the person who creates such a state of mind is criminally responsible, where, on the evidence presented, the jury could determine that the victim, when assaulted by the defendant, believed her situation to be desperate, resisted, and attempted to escape, and that her resulting injuries from a razor and lighted cigarette wielded by the defendant were therefore not accidental. [733-734]

INDICTMENTS found and returned in the Superior Court Department on September 26, 1986.

The cases were tried before *Charles R. Alberti,* J.

*Richard D. LeBlanc,* Committee for Public Counsel Services, for the defendant.

*Robert J. Carnes,* Assistant District Attorney, for the Commonwealth.

CUTTER, J.  The following findings could have been made by the jury on the evidence at the trial of indictments[1] on which

_____

[1] The jury returned verdicts of guilty of (a) assault on Donna Parker in a dwelling house with a dangerous weapon, (b) two charges of assault and battery on her with a dangerous weapon (one a lighted cigarette and the other a razor blade), and (c) assault and battery. He was sentenced to concurrent terms of five to seven years at M.C.I., Cedar Junction, on the convictions of assault and battery with a dangerous weapon and to an "on and

Parker was found guilty. He was found not guilty on other charges.[2] We affirm the judgments.

Parker and his wife (Donna) had been living with their two children in a house on Chapel Street, Pittsfield (the premises). During the summer of 1986, marital difficulties arose. A District Court order was obtained by Donna directing Parker to vacate and remain away from the premises and prohibiting him from abusing her. The order had been extended to September 5, 1986.

At some time after 9 P.M. on August 22, 1986, Donna had been talking by telephone with her aunt. As she hung up the telephone, she saw Parker "crouched at the end of the hallway."

Donna requested Parker to leave and screamed. She tried to use the telephone. Parker prevented her from doing so. He told her he wanted to talk with her. She refused to do so. She (without knowing just what happened) then found herself half on and half off a couch in the living room with Parker on top of her blaming her for their marital discord. He would hit her "every time . . . [she] opened . . . [her] mouth" in the face, on the side of her head, and in the shoulder. During this time, Donna and Parker "were . . . struggling with each other." Among other things, he told her that, if he was not able to get the family situation straightened out, "he was going to kill himself" by pouring "gasoline on himself and make the kids watch him die."

Parker put a cigarette in his mouth and lit it. Donna said, "Please don't burn me." Parker replied, "It's something I have to do. I must do it." She "knocked the cigarette out of his hand . . . . [She] didn't know . . . [she] even got burned by it, but he did hit . . . [her] with it." He kept hitting her, and

after" term of ten to twelve years at M.C.I., Cedar Junction, suspended, probation, three years, on the conviction of assault in a dwelling house with a dangerous weapon. The assault and battery conviction was placed on file.

[2] These were charges of assault with intent to murder and burglary and assault on an occupant. A charge of violating a restraining order was dismissed on Parker's motion for a required finding at the close of the Commonwealth's evidence because of a mistake in the indictment.

told her she "would be dead before the night was over." She, naturally, was scared by this behavior.

At one point, Parker "took some little thing out of his pocket." She did not know "exactly what it was because it was dark" with light only from a television. Whatever it was, "he opened it up." [3]

Donna testified that her six year old daughter Shana entered the room while she was struggling with Parker on the couch. Donna asked her to run for help. Shana started for the back door. Parker rose to stop her and Donna seized the chance to escape by the front door to a neighbor's house. There she noticed for the first time that her hand was bleeding. The neighbor called the police and Donna went to the neighbor's kitchen to put cold water on her hand which was bleeding and badly cut. When the police arrived she was taken by ambulance to a hospital where she was subjected to surgery about 2 A.M., and was required to remain for four days. [4]

Parker left the premises shortly after Donna did. Police searched the area and found Parker away from the house near a pool of blood. A burnt cigarette was found in the living room area. A sharp razor blade and holder were found between the house on the premises and where Parker was discovered. A

---

[3] The item was a razor blade with a handle. Parker, when he testified, admitted that he had entered the house through a window while drunk, and that, while arguing with Donna on the couch (and sitting there on top of her), he had reached in his pocket for a razor and slid the double-edged blade out of its handle to show her how he intended to kill himself by cutting his wrist. He claimed that she (left handed) grabbed the razor, to his "best memory" with her right hand, just as he slipped to the floor, with the razor still in his hand. He denied swinging at her or trying to cut her with the razor or trying to burn her with a cigarette. He admitted that ashes fell off the cigarette during the struggle, that the cigarette eventually fell on the floor, but he did not know how that happened.

[4] An orthopedic surgeon who saw Donna at the hospital testified that she had a "definite, firm, circular . . . mark on the face, that wouldn't look like something could just . . . touch the face and leave that type of mark without some pressure being applied," that the injury to her hand was consistent with the type of cut made by a surgical scalpel or other very sharp object such as the razor blade in evidence, and that, in the circumstances of a struggle and the attendant excitement, Donna might not have had an immediate sensation of pain from the cut.

handwritten note from Parker entitled a "last will and testament," written on the morning or early afternoon of August 27, 1986, was received by the police from a nurse who attended Parker at the hospital. This reasonably could be regarded as a "suicide note." In any event, Parker did cut his wrist after leaving the house and after Donna had gone to the neighbor's house.[5] The evidence suggests that he nearly succeeded in his suicide attempt. He was taken to a different hospital.

Parker, by his counsel, makes as his principal contention that the judge improperly instructed the jury on assault and battery by means of a dangerous weapon and Parker's argument that any injury to Donna by such a weapon was an accident. The prosecutor requested an instruction which led the judge to charge (with some variations) in the form set out in the margin.[6]

---

[5] The theory of Parker's defense was that the injuries to Donna were purely accidental. He, a former army parachutist, had been injured in a 1977 automobile accident and testified that he was considered by Social Security authorities to be one hundred percent disabled so that he and his children were receiving substantial benefits each year. Nevertheless, in August, 1986, evidence of his activity shows that he remained physically mobile. He had become increasingly despondent about what was to him apparently unexpected discord with his wife. She had left with their children without warning and without telling him where she was going. He had been served with a court order to vacate his house and to stay away from it. He had lived with friends or his mother, for some days, sleeping on couches or on small beds which caused aggravation of a preexisting lower back condition from which he suffered at least periodic pain. He was not sleeping well. After a period of increasing depression (including a brief stay at Northampton State Hospital), he had decided to talk with Donna directly (and not through lawyers) to persuade her to return to him, and to commit suicide if she refused. Although he took a razor blade with him when he went to the house it was, so he contended, his purpose to use it only on himself. See note 3, supra.

[6] The judge's instructions (with indicated elisions and with capital letters in brackets inserted for convenient reference): "[A] . . . Throughout the case as you assess and . . . discuss, keep in mind that . . . [Parker] has said that the events that took place were the result of an accident. [B] Evidence has been offered . . . for you to consider in determining whether . . . [he] committed a criminal act or whatever occurred was a pure and simple accident. [C] In such consideration you must be ever mindful that the Commonwealth must prove beyond a reasonable doubt that what occurred that they allege to be a criminal act was not an accident. [D] If you con-

The portion of this instruction to which defense counsel makes primary objection is the language following the bracketed letter [F] which, in the Commonwealth's original request for instruction, apparently was based on the language in *Commonwealth* v. *Bianco*, 388 Mass. 358, 362-363, *S.C.*, 390 Mass. 254 (1983), reading, "There is considerable authority for the principle that if, by a wrongful act, a man 'creates in another man's mind an immediate sense of danger which causes such person to try to escape, and in so doing he injures himself, the person who creates such a state of mind' is criminally responsible for those injuries. *Regina* v. *Halliday*, 61 L.T.R. (n.s.) 701, 702 (1889). See generally *United States* v. *Guillette*, 547 F.2d 743, 749 (2d Cir. 1976), cert. denied, 434 U.S. 839 (1977)" (other citations omitted).[7] That portion of the charge was the subject of defense objections. In any event, the judge proceeded to explain to the jury the various indictments, including the two indictments for assault and battery by means of a dangerous weapon (i.e., by either a lighted cigarette or a razor blade).[8]

---

clude that the Commonwealth has failed to sustain that burden of proof beyond a reasonable doubt, then you must find . . . [Parker] not guilty of the charge. [E] Accident is defined as an unintended happening that results in injury or loss. It's some sudden and unexpected event that takes place without expectation. [F] Now . . . you can also consider that if by a wrongful act a person — and the Commonwealth suggests that that is the case here — creates in another person's mind an immediate sense of danger which causes such person to try to escape or defend . . . herself, and in so doing . . . she injures . . . herself, the person who creates such a state of mind is criminally responsible for those injuries. [G] Now . . . if you find . . . that the Commonwealth has sustained its burden of proof beyond a reasonable doubt that it wasn't accident, you must determine what the extent of the criminal responsibility . . . is."

[7] In the *Bianco* case, 388 Mass. at 363-364, it was held (over a dissent at 370-375) that the evidence there presented "was insufficient to establish beyond a reasonable doubt that the assault and battery on" one of the victims had caused them to enter a vehicle (in an attempt to escape bodily injury) in which they were later drowned. One ground of the dissent was based on the view (at 374) that on the evidence, "the jury could reasonably infer that the victims [in that case] sought to escape further harm."

[8] The judge instructed, "To prove assault and battery, the Commonwealth must prove beyond a reasonable doubt . . . that there was an intentional, unprivileged, and unjustified touching of the person of another, and also

The judge told the jury to deal with each of these indictments separately. He then described a "dangerous weapon" as "any item so constructed or used so as to be likely to produce death or great bodily injury."[9]

The jury during their deliberations asked a question not directly related to the two indictments for assault and battery with a dangerous weapon. Defense counsel then said in a bench conference, "[S]ince the jury seems to be confused about intent, I would . . . note . . . that under the assault and battery with a dangerous weapon offenses, it is not listed under one of the elements that there be an intentional touching with the dangerous weapon." The judge asked defense counsel, "What do you want me to say?" Counsel replied, "All I'm looking for is [that] everybody is sure that in order to find an assault and battery by means of a dangerous weapon they [must] find that there is an intentional touching, i.e., not an accidental touching with a razor blade." Counsel denied that he wanted "anything else." After the bench conference, the judge gave a further instruction.[10]

---

that the touching was either physically harmful or potentially harmful . . . done without the consent of the person touched. Physically harmful touching is a battery, and consent is immaterial. However, a nonharmful touching is a battery only if there is no consent . . . . Any touching with such violence that bodily harm is likely to result is a battery, and consent is immaterial."

[9] The judge proceeded, "For example . . . a lighted cigarette is not a dangerous weapon when used for the purposes for which it is intended . . . . But you may consider the manner in which the cigarette that is lit may be used. You should also consider whether, based on the objective conditions at the time of the assault, the exhibition of the item could reasonably engender the victim's fear and whether the perpetrator of the assault did intend to provoke that fear . . . . [Parker] says that there was no intent of any sort to assault and batter Donna Parker . . . with the razor blade, and that anything that happened to her was a result of accident. The Commonwealth has a burden of proof beyond a reasonable doubt that it wasn't an accident. The same is true as to a lighted cigarette."

[10] The further instruction was, "On both the assault and battery, dangerous weapon, let me touch on those now. Counsel is concerned that I not ignore the fact that they require an intent, not an accidental act. It's just the intent is not a specific intent to commit assault and battery or assault and battery [by means of a] dangerous weapon. And the issue then I just want you to . . . understand that requires an intentional act; it's not an accidental act . . . . It's different from the specific intent required in those matters."

In testing the judge's instructions which led to the convictions of Parker, there is one basic issue common to each offense of which he was convicted. The judge certainly made it clear to the jury that, if Parker intentionally cut Donna with the razor blade or burned her with the lighted cigarette, he could be found guilty of assault and battery with a dangerous weapon. As was said in *Commonwealth* v. *Burno*, 396 Mass. 622, 625 (1986), "An assault and battery is 'the intentional and unjustified use of force upon the person of another, however slight' . . . or the intentional commission of a wanton or reckless act causing physical or bodily injury to another . . . ." The injuries to Donna here were clearly proved and were substantial enough to cause her to be confined in a hospital for four days or more. These injuries certainly were significant enough to interfere "with the health or comfort of the victim." See *Burno* at 627.[11]

The trial judge (see, e.g., note 3 at [A], [B], and [E] *supra*) adequately charged the jury that they must acquit Parker if they found the cutting of Donna by the razor blade or the burning of her by the lighted cigarette to be accidental. Either of these or both of these reasonably could be found by the jury to have been the particular weapons that caused significant injuries to her hand and face. See *Commonwealth* v. *Appleby*, 380 Mass. 296, 306-308 (1980). See also *Commonwealth* v. *Farrell*, 322 Mass. 606, 614-615 (1948); *Commonwealth* v. *Welch*, 16 Mass. App. Ct. 271, 276-277 (1983). Nevertheless,

---

[11] If, in the "first incident" discussed in the *Burno* case, either police officer had sustained a burnt spot underneath his eye and as serious a cut and loss of blood as Donna did here, it may well be that the Supreme Judicial Court and this court, see 18 Mass. App. Ct. 796, 799-803 (1984), would have concluded that the conviction, even on the second incident discussed in the *Burno* case, was justified as a wanton and reckless act causing serious injury to another.

The judge in the present case did not instruct the jury that they could find Parker guilty because his conduct involved wanton and reckless use of a dangerous weapon which resulted in serious (and not "trifling") bodily injury to Donna. See the *Burno* case, 396 Mass. at 625, 627. On the evidence before the jury on the physical injuries to Donna, such an instruction would have been justified. The instruction actually given, however, based on the theory and language of the *Bianco* case, 388 Mass. at 362-363, may have had much the same practical effect.

the instructions (in fact given about the contention that the wounding of Donna was an "accident") would have been too favorable to Parker, if the judge had not given also the instruction (see note 6 at [F], *supra*) in view of Parker's unlawful activities on August 22, 1986, leading to that wounding.

Parker, despite his back injuries, had violated a still effective restraining order, to which he admitted that he gave no thought. He had broken into the house where Donna and their children were living. He had surprised and scared his wife, who was seeking a divorce from him. He intentionally had placed Donna under him on the couch and had lighted a cigarette and displayed the razor blade to her. These reasonably could be found by the jury to have caused Donna (1) to believe her situation was desperate, (2) to resist Parker, and (3) to attempt escape from him.

If they so found, they could also conclude that what Donna did as a reaction to Parker's behavior (if it brought her hand in contact with the razor or led to her face being burned by the cigarette) was caused by Parker as fully as if he intentionally had pressed the cigarette on to her face or had struck her hand with the razor. On the evidence and applying the principle discussed in the *Bianco* case, 388 Mass. at 362-365, the jury could determine beyond a reasonable doubt that Parker had committed an intentional assault and battery with a dangerous weapon. Such a determination that her injuries were the result of her attempts to push away the razor blade or the burning cigarette would be decisive that her injuries were not an "accident." The disputed instruction was proper.

We think that this determination deals with all the indictments before us (see note 1, *supra*) on which Parker was convicted.

*Judgments affirmed.*