## COMMONWEALTH vs. JAMES K. CLEARY.

No. 95-P-132.

Franklin. March 19, 1996. - August 28, 1996.

Present: SMITH, GREENBERG, & FLANNERY, JJ.

*Mayhem. Assault and Battery by Means of a Dangerous Weapon. Wilful, Wanton, or Reckless Conduct.*

At the trial of an indictment for mayhem, evidence that in the course of a melee the defendant struck the victim once forcefully with a bladeless ax handle resulting in the victim's losing sight in one eye was insufficient to establish that the defendant acted with the specific intent to maim or disfigure. [216-218]

At the trial of an indictment for assault and battery with a dangerous weapon the judge did not err in instructing the jury with respect to reckless as well as intentional conduct as the basis for a finding of guilty. [218-219]

At a criminal trial the judge did not abuse her discretion in declining to excuse a juror who admitted to a casual acquaintanceship with one of the government's witnesses where the judge properly determined that the juror could render an impartial verdict. [219]

INDICTMENTS found and returned in the Superior Court Department on January 6, 1993.

The cases were tried before *Mary-Lou Rup*, J.

*Kenneth I. Seiger* for the defendant.

*Shaun S. McLean*, Assistant District Attorney, for the Commonwealth.

GREENBERG, J. An indictment (no. 93-004) charged the defendant, James K. Cleary, with a violation of the mayhem statute, G. L. c. 265, § 14. The statute[1] provides:

[1]The statute contains two branches. *Commonwealth* v. *St. Pierre*, 377 Mass. 650, 661 & n.14 (1979). *Commonwealth* v. *Robinson*, 26 Mass. App. Ct. 441, 445 & n.6 (1988). The indictment at issue here seems to combine both branches of the statute. It reads, in relevant part, that "James K. Cleary . . . did assault Matthew Scott Noska and with malicious intent to

> "[1] Whoever, with malicious intent to maim or disfigure
> . . . puts out or destroys an eye , . . . or [2] whoever,
> with intent to maim or disfigure, assaults another person
> with a dangerous weapon . . . and by such assault
> disfigures, cripples or inflicts serious or permanent phys-
> ical injury upon such person . . . shall be punished
> . . . ."[2]

At trial to a Franklin County jury, the government pre-
sented the following basic scenario through its witnesses. On
a cold evening in December, 1992, the defendant was out in
his hometown of Greenfield with friends. He and others
eventually drove to the No-Name Bar. The defendant's
brother, Michael Cleary, was also at the bar. An argument
about money led to a physical confrontation between the de-
fendant and another patron of the bar, James Mahar. As they
scuffled across the barroom, one member of Mahar's party,
Michael Elie, was bumped and expressed disgust at the
flare-up between the two men. Michael Cleary grabbed Elie.
Eventually the combatants settled down and continued to
imbibe until closing time. The defendant had his brother and
two other men with him in his car when he was leaving the
parking lot at the No-Name.

The victim, Matthew Scott Noska, and some of his friends,
including Michael Elie, were also at the No-Name until clos-
ing time. They went to the parking lot and were on their way
to a Dunkin' Donuts restaurant for an early breakfast. As
Noska crossed the parking lot to enter his car, the defendant,
without headlamps lit, backed his car out of a parking space
and nearly hit him. Noska quickly jumped out of the car's
path. Noska and one or more of those with him kicked the
door panels to show their disgust.

There was testimony that, after the defendant's car was
kicked, the occupants of the car got out. When the defendant
tried to get out of the car, the door was pushed against him.
Fighting ensued between the men with Matthew Scott Noska
and those with the defendant. At some point, the defendant

---

maim and disfigure said person, did inflict serious or permanent physical
injury upon said Matthew Scott Noska by striking said person in the eye
with an ax handle and by rupturing the right eyeball by such assault." Both
branches of the statute contain a requirement of specific intent.

[2]The defendant was also charged with assault and battery by means of a
dangerous weapon (indictment no. 93-005).

grabbed the bladeless ax handle that he had in his car (and he later testified that he kept on hand as a leverage tool for his boat trailer and for his job as a construction worker). Holding the ax handle in both hands, the defendant struck Matthew Scott Noska with it one time. After striking Noska, he shouted, "Anyone else want to fuck with me?"

There is no question that the injury sustained by Noska was serious and permanent. The blow fractured the orbital bone, ruptured the eye globe, and resulted in a detached retina of the right eye. The retina surgeon who performed the surgeries to reattach the detached retina testified that the prognosis for Noska regaining any "useful vision" in his right eye is poor. The surgeon also testified that it was unusual for there to be both an orbital fracture and a rupture to the eye. She offered her opinion that "[h]is injuries were consistent with a blunt rupture, a blunt injury, . . . the wounds and the globe, . . . occurring together, . . . indicate[s] that the force used was substantial."

At the close of the Commonwealth's evidence, the defendant made a motion for a required finding of not guilty on both indictments. The defendant waived argument on the indictment charging assault and battery by means of a dangerous weapon. The defendant argued that, on the indictment charging mayhem, the Commonwealth had failed to prove the specific intent required to constitute the crime. The trial judge denied the motion. The defendant then presented his case which included evidence that he acted in self-defense.

After closing arguments, the judge instructed the jury on the elements of assault and battery by means of a dangerous weapon and on mayhem. Over the defendant's objection, the judge's charge concerning the essential elements of battery included the instruction that the jury could convict if they found his conduct to be wanton and reckless. See *Commonwealth* v. *Burno,* 396 Mass. 622, 625-627 (1986). The jury brought in verdicts of guilty on both indictments, and judgments of conviction followed.[3] The defendant appeals.

1. *Sufficiency of the evidence on the mayhem charge.* The defendant makes a compelling argument that the govern-

---

[3]The defendant was sentenced to from nine to ten years imprisonment in State prison on the assault and battery by means of a dangerous weapon conviction. Upon the mayhem conviction, the defendant was sentenced to from fifteen to twenty years in State prison, the execution of that sentence

ment's proof on the mayhem indictment was insufficient because there was no direct or inferential showing of the defendant's specific intent to maim or disfigure Noska. See *Commonwealth* v. *Hogan*, 7 Mass. App. Ct. 236, 244, *S.C.*, 379 Mass. 190 (1979). He points out that not every aggravated assault and battery by means of a dangerous weapon that results in disabling and serious injuries supports a specific intent to maim or disfigure. See *Commonwealth* v. *Hogan*, at 245. The government argues that, in this case, the specific intent to maim or disfigure is inferable from the severity of the injuries that resulted from a single blow to Noska's head. *Commonwealth* v. *Lazarovich*, 28 Mass. App. Ct. 147, 154 (1989).

Under Massachusetts case law, the specific intent to maim or disfigure can be established by "direct or inferential proof that the assault was intentional, unjustified, and made with reasonable appreciation on the assailant's part that a disabling or disfiguring injury would result." *Commonwealth* v. *Davis*, 10 Mass. App. Ct. 190, 196 (1980). Prior to the passage of G. L. c. 265, § 14, the rule existed as matter of common law. See 4 Blackstone, Commentaries * 205.[4] Where the government lacks direct evidence of the requisite intent, as it usually does, the cases permit the inference if there is an evidentiary showing that the injuries arose from a sustained or atrocious attack. In *Commonwealth* v. *Farrell*, 322 Mass. 606, 619 (1948), the defendant captured the victim in a hotel room over a period of hours. There, he repeatedly slashed her with a safety razor and burned his initials into her skin. The court observed that "the defendant must be taken to have intended the natural and probable consequences of his acts." *Ibid.* In another case, evidence of sustained beatings by the defendants that resulted in a victim's unconsciousness, as well as fractures, facial contusions, and eardrum damage, were enough to warrant a conviction of the defendant. *Commonwealth* vs. *Lazarovich*, 28 Mass. App. Ct. at 154. In *Commonwealth* v. *Tucceri*, 9 Mass. App. Ct. 844, 845 (1980), the defendant repeatedly rubbed dirt in the victim's eyes and

---

was suspended, with three years probation, to take effect from and after completion of the sentence on the assault and battery conviction.

[4]Mayhem is defined by Blackstone as "the violently depriving another of the use of such of his members, as may render him the less able in fighting, either to defend himself, or to annoy his adversary."

struck one side of her face near the eye. Other cases that involved the infliction of serious injuries from which the requisite intent could be established inferentially include: *Commonwealth* v. *St. Pierre*, 377 Mass. 650, 652-653 (1979) (fellow prisoners held victim's arm and slammed a steel cell door against the victim's arm four times); *Commonwealth* v. *Hamm*, 19 Mass. App. Ct. 72, 80 (1984) (victim's nose and lip were slit with a knife by the defendant); *Commonwealth* v. *Mercado*, 24 Mass. App. Ct. 391, 393-395 (1987) (defendant fractured bone structure of the victim's face and did permanent damage to the inner ear by beating with a baseball bat); *Commonwealth* v. *Taghizadeh*, 28 Mass. App. Ct. 52, 56, 58 (1989) (defendant threw highly concentrated nitric acid on his wife's face).

Against this backdrop of cases, we conclude that the government failed to establish, in its case-in-chief, that the defendant acted with the specific intent to maim or disfigure. Thus, the defendant's motion for a required finding on that charge (or as later repeated at the close of the defendant's case) was mistakenly denied. In the present situation, the defendant's conduct, however inexcusable, does not constitute the type of heinous attack that supports an inference that he intended to disfigure Noska. Nor does the government's case show a sustained or prolonged type of assault on his part from which the requisite intent may be inferred. Viewed in its best light, the government's evidence shows that the defendant acted on the spur of the moment after Noska kicked his car. This is not a case in which it is apparent from the context of the confrontation that the defendant intended to disfigure someone.

2. *The jury instruction on assault and battery by means of a dangerous weapon.* Besides providing the jury with the classic definition of assault and battery, see *Commonwealth* v. *McCan*, 277 Mass. 199, 203 (1931), the judge also instructed that assault and battery by means of a dangerous weapon, like assault and battery, may rest on reckless, as well as on intentional, conduct. *Commonwealth* v. *Welch*, 16 Mass. App. Ct. 271, 273-277 (1983). The defendant contends that the instruction, given over his objection, was not warranted on the evidence and that it confused the jury regarding the intent to prove mayhem. We need not address the latter assertion in view of our determination in the defendant's favor in the pre-

ceding section of this opinion.[5] We reject the defendant's argument that the evidence did not permit the jury to consider the assault and battery by means of a dangerous weapon on a theory of wanton or reckless conduct. When the defendant testified that he "just swung" and that "there was no intention," he opened up the issue for the jury. Here the injuries were certainly significant and the circumstances sufficient to permit the jury to infer that they were caused by the defendant's wilful, wanton, and reckless conduct. See *Commonwealth* v. *Parker*, 25 Mass. App. Ct. 727, 732-733 (1988).

3. *Miscellaneous matters.* There is nothing in the record before us that remotely indicates that the judge abused her discretion in declining to excuse a juror who admitted to a casual acquaintanceship with one of the government's witnesses. The judge properly determined that their relationship would not affect her ability to render an impartial verdict on the case. See *Commonwealth* v. *Jackson*, 376 Mass. 790, 799 (1978). There was no objection to the judge's ruling on the defendant's recusal motion, so that issue is waived. See *Commonwealth* v. *Miranda*, 22 Mass. App. Ct. 10, 14 (1986).

The judgment on indictment no. 93-004 is reversed. The verdict is set aside, and judgment for the defendant shall enter on that indictment.

The judgment on indictment no. 93-005 is affirmed.

*So ordered.*

---

[5]We also need not address the Commonwealth's offer to vacate the assault and battery conviction on the basis that sentencing on both convictions violates the principles set forth in *Commonwealth* v. *Jones*, 382 Mass. 387, 394-397 (1981), in view of our reversal of the mayhem conviction.