## Commonwealth *vs.* Thomas Johnson.

No. 02-P-1419.

Suffolk. November 18, 2003. - December 30, 2003.

Present: Doerfer, Brown, & Green, JJ.

*Assault and Battery by Means of a Dangerous Weapon. Mayhem. Evidence,* Hearsay, Identification, Admission by silence. *Identification. Practice, Criminal,* Duplicative convictions.

At the trial of indictments charging the defendant with mayhem and assault and battery by means of a dangerous weapon, the judge erred in admitting in evidence, over objection, a police officer's testimony that several persons other than a witness who testified at trial had identified the defendant as the assailant, where the testimony went beyond explaining how the officer's attention came to focus on the defendant; moreover, the error was not harmless beyond a reasonable doubt, in that the hearsay served to corroborate the testifying witness's identification of the defendant as the assailant when there were reasons otherwise to question that identification. [245-246]

This court concluded that the evidence at the first trial of indictments charging the defendant with mayhem and assault and battery by means of a dangerous weapon was insufficient to establish the specific intent necessary to support a conviction of mayhem, and therefore ordered that the defendant's retrial be limited to the charge of assault and battery by means of a dangerous weapon. [246-247]

This court admonished the prosecutor and an arresting police officer not to inquire about or comment on the defendant's silence at the retrial of an indictment charging assault and battery by means of a dangerous weapon. [247]

Indictments found and returned in the Superior Court Department on September 25, 1996.

The cases were tried before *Nonnie S. Burnes*, J., and a motion for a new trial was heard by her.

*James L. Sultan* (*Catherine J. Hinton* with him) for the defendant.

*Susanne Levsen Reardon*, Assistant District Attorney, for the Commonwealth.

GREEN, J. A bar fight broke out early in the morning of August 4, 1996, in a Boston nightclub called "Polly-Esta's." It did not last long, but when it ended Edmund Kelleher's ear was nearly severed as the result of a single blow to his head with a beer bottle (which broke on impact). Kelleher did not see who hit him. Police attention soon focused on the defendant.

On June 16, 1997, a Superior Court jury convicted the defendant on charges of mayhem and assault and battery by means of a dangerous weapon. The defendant moved for a new trial; on August 11, 1997, the judge (who had presided over his trial) denied the motion. Shortly thereafter, the defendant obtained a stay of execution of the remainder of his sentence; the case is now before us on the defendant's consolidated appeal.[1]

The defendant maintains that the Commonwealth prosecuted the wrong person. On appeal the defendant argues, consistently with that theory, that (i) hearsay testimony identifying him as the assailant was improperly admitted over objection; and (ii) his trial counsel was ineffective in failing to interview, and call at trial, a witness who would have testified that he (and not the defendant) fought with Kelleher. The defendant also asserts that his convictions on both mayhem and assault and battery by

---

[1]It bears comment that the defendant's appeal did not enter on our docket until October 22, 2002, more than five years after his new trial motion was denied. The first docket entry reflects receipt of four volumes of trial transcript on that date. Two volumes of the trial transcript, covering the testimony, opening and closing arguments, and the judge's instructions to the jury, total almost 400 pages and were completed, according to the court reporter's certificate, eight days after the defendant's conviction. The remaining two transcript volumes relate, respectively, to the verdict and sentencing (fifteen pages) and the defendant's motion for a stay of execution of his sentence (thirty-four pages). Neither court reporter's certificate for those two volumes (different court reporters covered each proceeding) reflects the date she completed her portion of the transcript. The defendant's appellate counsel candidly acknowledged at oral argument that, once the defendant's sentence was stayed, he made one inquiry to the clerk's office about the status of the record (about one year after filing the notice of appeal) but otherwise felt little inducement to press the appeal. The Commonwealth did not monitor the status of the appeal. It is unclear how much of the lengthy delay in entering the appeal on our docket resulted from the court reporters' failure to transcribe the forty-nine pages of proceedings following jury deliberations, and how much is attributable to the lower court clerk's office. The delay is, however, plainly unacceptable.

means of a dangerous weapon are duplicative (which the Commonwealth concedes, see *Commonwealth* v. *Martin*, 425 Mass. 718, 722 [1997][2]) and that, since the evidence was insufficient as matter of law to support conviction on a charge of mayhem, he should be retried solely on the lesser of the two charges.[3]

1. *Hearsay identification.* At trial, a single eyewitness, Ginny DePalo, testified that she saw the defendant strike Kelleher. It was late at night, DePalo had consumed alcohol earlier in the evening, and the nightclub was crowded, strobe-lit, and smoky. Sergeant Arthur Stratford was allowed to testify, over objection, that following the altercation "numerous people," "[a]t least three," pointed to the defendant as Kelleher's assailant. Later during his direct examination, Sergeant Stratford was allowed to testify, again over objection, that several persons other than De-Palo had identified the defendant as Kelleher's assailant:

Q: "Did anyone else notice the person who had struck Mr. Kelleher with the bottle?"

A: "Yes."

Q: "About how many people?"

A: "A white male, whose name I don't happen to know right now. And I think he is on a police report. Ginny [De-Palo], the manager, Ted Alice."

The defendant's motion to strike Sergeant Stratford's testimony, quoted above, was denied.

The Commonwealth suggests that the officer's testimony was properly admitted to explain how the attention of the police came to center on the defendant. See *Commonwealth* v. *Rosario*, 430 Mass. 505, 508 (1999). The officer's first reference to others implicating the defendant likely went beyond the scope allowed under *Rosario*;[4] in any event, the officer's later statements were clearly inadmissible. See *Commonwealth* v. *Parkes*,

---

[2]The Superior Court judge did not have the benefit of the holding in *Commonwealth* v. *Martin*, *supra*, at the time she ruled on the defendant's new trial motion.

[3]The defendant also claims that testimony regarding his pre- and post-arrest silence was improperly admitted, claims we address briefly below.

[4]Such testimony "must be limited to the facts required to establish the officer's state of knowledge," and should ordinarily be limited to "a statement that the officer acted 'upon information received,' or 'as a consequence of a

53 Mass. App. Ct. 815, 819-820 (2002). We consider whether the error was harmless beyond a reasonable doubt. See *Commonwealth* v. *Rosario, supra* at 511.

The officer's improperly admitted testimony served to corroborate DePalo's identification of the defendant as Kelleher's assailant. The defendant contended that he was misidentified, and there were reasons as noted above to question the identification made by the one eyewitness who testified at trial.[5] In the circumstances we cannot say with assurance that the error was harmless beyond a reasonable doubt; indeed the effect of the improperly admitted testimony is comparable to that in *Commonwealth* v. *Parkes, supra*, in which similar testimony led to reversal even though the error in that case was not properly preserved. The defendant is entitled to a new trial.

2. *Sufficiency of evidence.* We consider the defendant's claim that the evidence was insufficient to support his conviction of mayhem, for the purpose of determining the scope of the charge on which he may be retried.

Mayhem is a crime of specific intent, requiring proof that the defendant intended to maim or disfigure the victim. G. L. c. 265, § 14. Though direct evidence frequently, as in the present case, will be inadequate to establish the requisite intent, intent may be inferred from the nature of the injuries inflicted on the victim. See *Commonwealth* v. *Cleary*, 41 Mass. App. Ct. 214, 217 (1996). In *Cleary*, the defendant struck the victim with a bladeless axe handle, causing severe and permanent injury to the

---

conversation,' or words to that effect — without further detail." *Commonwealth* v. *Rosario, supra* at 509-510, quoting from *Commonwealth* v. *Perez*, 27 Mass. App. Ct. 550, 555 (1989). Since DePalo told the officer that the defendant was Kelleher's assailant, reference to others was wholly unnecessary to explain the officer's pursuit of the defendant.

[5]Because we conclude that the defendant is entitled to a new trial by reason of the improperly admitted hearsay testimony identifying the defendant as Kelleher's assailant, we do not reach the defendant's argument that he was denied effective assistance of counsel by reason of trial counsel's failure to call as a witness the defendant's companion, who he asserts was the person who fought with Kelleher. However, the affidavit of Alex Gureckis, submitted in support of the defendant's new trial motion and claiming that he (Gureckis) was Kelleher's assailant, tends likewise to cast doubt on DePalo's identification of the defendant, and therefore to support the defendant's claim that he was prejudiced by the improperly admitted identification testimony.

victim's eye and face. We held that, despite the severity of the victim's injuries, the circumstances of the attack did not support a conviction of mayhem. In so doing, we noted that mayhem typically involves a sustained assault, supporting an inference of intent to administer an injury sufficient to support the charge. *Id.* at 217-218. In the present case, despite the severity of the injuries inflicted, we conclude as in *Cleary* that the circumstances of the attack do not support an inference that the attacker specifically intended to maim or disfigure the victim. The entire attack lasted no more than one and one-half minutes, and the injuries resulted from a single strike with a beer bottle that was intact before it struck Kelleher's head. Any time a dangerous weapon is used in an assault and battery there is the potential that its use will result in serious injury. To find the requisite specific intent to support mayhem in the circumstances of the present case, based on a single strike with a beer bottle in the midst of a brief bar fight and without any other evidence of the attacker's intent, would collapse the distinction between the offenses of mayhem and assault and battery by means of a dangerous weapon. The evidence in the defendant's first trial accordingly was insufficient as matter of law to support his conviction on the charge of mayhem, and his retrial shall solely concern the lesser charge of assault and battery by means of a dangerous weapon.

3. *Testimony regarding the defendant's silence.* Sergeant Stratford's direct testimony included the following exchange:

Q: "Did you make any observations of [the defendant] about his person?"

A: "Well, just that he didn't say anything to me. He was completely stone faced. He didn't say anything, he didn't make any body movements. He didn't resist, he didn't talk, he didn't do anything."

Q: "Did he say anything to you when you placed him under arrest?"

A: "Nothing. Nothing."

At retrial the Commonwealth and the officer should avoid such inquiry into, or comment upon, the defendant's silence.

See *Doyle* v. *Ohio*, 426 U.S. 610 (1976); *Commonwealth* v. *Nickerson*, 386 Mass. 54 (1982).

*Conclusion.* The judgments are reversed, the verdicts are set aside, and the case is remanded to the Superior Court for a new trial on the charge of assault and battery by means of a dangerous weapon.

*So ordered.*