NOTICE: All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports. If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

13-P-730                                          Appeals Court

COMMONWEALTH vs. TIMOTHY FORBES.

No. 13-P-730.

Hampden.      June 3, 2014. - August 26, 2014.

Present: Kantrowitz, Milkey, & Hanlon, JJ.

Mayhem. Assault and Battery. Practice, Criminal, Duplicative convictions, Lesser included offense.

Indictments found and returned in the Superior Court Department on May 15, 2012.

The cases were tried before Constance M. Sweeney, J.

David Hirsch for the defendant.
Bethany C. Lynch, Assistant District Attorney, for the Commonwealth.

MILKEY, J. After a jury trial in Superior Court, the defendant was convicted of one count of mayhem, G. L. c. 265, § 14 (first theory), and one count of assault and battery causing serious bodily injury, G. L. c. 265, § 13A(b)(i). The defendant makes two different arguments that the mayhem conviction is unsupported by sufficient evidence. Finding those

arguments unpersuasive, we affirm that conviction. However, we vacate the conviction of assault and battery causing serious bodily injury, because we agree with the defendant that it is duplicative of the mayhem conviction.

Background. Based on the Commonwealth's evidence, the jury could have found the following facts. On March 9, 2012, the defendant attended a youth basketball tournament at the Holy Name School in Springfield. In the fifth and sixth grade championship game, a team featuring the defendant's two sons played against an opposing team coached by the victim, Jose Feliciano. The game was fairly close until both of the defendant's sons "fouled out." The opposing team went on to win by a fairly large margin.

At the end of the game, the players from both teams lined up in the middle of the court to shake hands, and the coaches lined up behind them. The defendant joined the end of the line of his sons' team. When Feliciano reached the defendant, the defendant assumed a "fighting stance" and began to kick and throw punches at him. With his hands up, Feliciano backpedalled away from the defendant, but the defendant continued to advance and throw punches. Feliciano retreated all the way to the gymnasium wall, where the defendant locked him in a "bear hug." This allowed the defendant to pin Feliciano's arms and to position his mouth near Feliciano's neck.

A group of people gathered around the men and attempted to pull the defendant off Feliciano. In particular, Feliciano's wife repeatedly hit the defendant in the head in an effort to separate him from her husband. It was at this point that Feliciano felt the defendant's teeth clamp onto his left ear and then heard a "crunching" sound as a portion of the ear was ripped off. In this manner, the defendant bit off a large piece of Feliciano's ear, later measured to be four centimeters by two and one-half centimeters. After he was finally separated from Feliciano, the defendant spat out the severed piece of ear on the floor and ran out of the gymnasium. According to Feliciano, the entire confrontation with the defendant lasted twenty to twenty-five seconds. A surgeon was unable to reattach the severed cartilage and skin to what remained of Feliciano's left ear.

Discussion. 1. Specific intent. To make out a case of mayhem under the theory under which the defendant was charged, the Commonwealth had to prove, inter alia, that he acted with "malicious intent to maim or disfigure." G. L. c. 265, § 14.[1]

---

[1] Under the first theory of mayhem, the relevant statute provides in pertinent part:

"Whoever, with malicious intent to maim or disfigure, cuts out or maims the tongue, puts out or destroys an eye, cuts or tears off an ear, cuts, slits or mutilates the nose or

Feliciano argues that there was insufficient evidence for the jury to find that he acted with such intent.  According to him, given the short duration and chaotic nature of the rapidly escalating circumstances, no reasonable juror could conclude that he specifically intended to maim or disfigure Feliciano.

In considering the sufficiency of the Commonwealth's evidence, we are required to view the evidence in the light most favorable to the Commonwealth.  Commonwealth v. Latimore, 378 Mass. 671, 677 (1979).  "[T]he specific intent to maim or disfigure can be established by 'direct or inferential proof that the assault was intentional, unjustified, and made with reasonable appreciation on the assailant's part that a disabling or disfiguring injury would result.'"  Commonwealth v. Cleary, 41 Mass. App. Ct. 214, 217 (1996), quoting from Commonwealth v. Davis, 10 Mass. App. Ct. 190, 196 (1980).  While specific intent may in some cases be demonstrated by evidence of a sustained attack, a prolonged assault is not a prerequisite; specific intent may also be inferred from the "severity and extent of the

---

lip, or cuts off or disables a limb or member, of another person . . . shall be punished . . . ."

The statute also establishes a second theory of mayhem, which involves the use of "a dangerous weapon, substance, or chemical."  "The two parts [of the mayhem statute] represent distinctive and independent bases of liability."  Commonwealth v. Hogan, 7 Mass. App. Ct. 236, 246 n.11 (1979).  It is undisputed that the defendant was indicted and tried only under the first theory.

[victim's] injuries." See Commonwealth v. Hap Lay, 63 Mass. App. Ct. 27, 36 (2005).

There was ample evidence for the jury to find that the defendant acted with specific intent to maim or disfigure Feliciano. Indeed, proof of the requisite intent can be drawn from the very fact that the defendant bit the victim's ear with adequate force and for a sufficient duration to crush and tear off a "very tough" layer of cartilage there. Regardless of the extent to which the defendant was agitated by the surrounding crowd of people attempting to disengage him, a jury might well have wondered how he could have bitten off a large portion of Feliciano's ear without maliciously intending to maim or disfigure him. It also bears noting that the defendant was the initiator of the fight, that he continued to kick and swing punches at Feliciano even as Feliciano was backing away, and that he wrapped his arms around Feliciano's arms, so that Feliciano was unable to fend off the defendant when he placed his mouth to Feliciano's ear.

The defendant's reliance on Commonwealth v. Cleary, 41 Mass. App. Ct. at 218, and Commonwealth v. Johnson, 60 Mass. App. Ct. 243, 246-247 (2003), is misplaced. In those cases, we reversed a mayhem conviction where the defendant struck the victim with "a weapon [that] caused a more severe injury than anticipated." Commonwealth v. McPherson, 74 Mass. App. Ct. 125,

128-129 (2009). Unlike the injuries suffered by the victims in Cleary and Johnson, the injury to Feliciano's ear in this case was "a logical and foreseeable consequence of [the defendant's] planned, sudden, and unprovoked attack." Id. at 129.

2. Nature of the injury. The defendant next contends that there was insufficient proof of the type of injury necessary to sustain a mayhem conviction. The relevant statutory language applies to one who "cuts or tears off an ear." The defendant argues that "off" should be interpreted as modifying both "cuts" and "tears." Based on this reading, he further argues that because it is undisputed that he bit off only a portion the victim's ear, he cannot reasonably be said to have cut off or torn off "an ear."[2] The Commonwealth maintains that "off" should be interpreted as modifying only "tears," not "cuts," and accordingly that one can be guilty of mayhem by making any cut to the ear, so long as it is done with the requisite "malicious intent to maim or disfigure."[3] Alternatively, the Commonwealth

_____

[2] The defendant argues that "an ear" means the entire outer ear; he concedes that one need not tear out the inner ear as well to be guilty of mayhem.

[3] The word "cuts" is used in various ways in the single sentence that comprises the statute. It is used as a stand-alone verb with regard to noses and lips ("cuts, slits or mutilates the nose or lip"), it is modified by "out" with regard to a tongue ("cuts out or maims the tongue"), and it is modified by "off" with regard to a limb ("cuts off or disables a limb or member"). Thus, the surrounding language of the statute

argues that even if "off" is interpreted as modifying both "cuts" and "tears," removal of the entire ear is not required.[4]

In interpreting a statute, we begin with the plain language, but also draw guidance from other sources, such as the statute's legislative history and the law of other jurisdictions.  See Commonwealth v. Jean-Pierre, 65 Mass. App. Ct. 162, 163 (2005).  "A statute should be construed in a fashion which promotes its purpose and renders it an effectual piece of legislation in harmony with common sense and sound reason."  Commonwealth v. Anderson, 38 Mass. App. Ct. 707, 710 (1995) (quotation and citation omitted).  Under the rule of lenity, we interpret ambiguities in a criminal statute in a defendant's favor.  Commonwealth v. Williamson, 462 Mass. 676, 679 (2012).

We need not resolve whether the rule of lenity requires that "off" be interpreted as modifying both "cuts" and "tears." That is because we agree with the Commonwealth that, in any

---

provides some textual fodder for each side.  See Commonwealth v. Brooks, 366 Mass. 423, 428 (1974) (we interpret "words in a statute . . . in light of the other words surrounding them"). The current version of the relevant language dates to 1836.  See R.S. 1836, c. 125, § 10.  An earlier version applied to people who "cut off an Ear."  St. 1804, c. 123, § 4.

[4] Although this is the first case in which we have considered the precise type of ear injury necessary to sustain a mayhem conviction, we previously affirmed a conviction of mayhem where the defendant bit off only a portion of the victim's ear. Commonwealth v. Davis, 10 Mass. App. Ct. at 190, 199.

event, one need not cut off or tear off an entire ear to be guilty of mayhem. Simply put, we think that interpreting "an ear" as necessarily denoting an entire ear ascribes to the word "an" a mathematical precision that was never intended. "The maxim that penal statutes are to be strictly construed does not mean that an available and sensible interpretation is to be rejected in favor of a fanciful or perverse one." Commonwealth v. Roucoulet, 413 Mass. 647, 652 (1992), quoting from Commonwealth v. Tata, 28 Mass. App. Ct. 23, 25-26 (1989) (Kaplan, J.). Certainly, we would not hesitate to affirm a mayhem conviction, for instance, where the defendant had removed all but a tiny portion of the victim's ear. At least where, as here, the evidence shows that the defendant severed a substantial portion of the victim's ear, we conclude that a jury reasonably could have concluded that the defendant's actions amounted to "cut[ting] or tear[ing] off an ear."

Moreover, this reading of the mayhem statute accords with the conclusions of courts interpreting similar statutes in other jurisdictions.[5] See Hawaii v. Gallagher, 9 Haw. 587, 588-590 (1894) (affirming mayhem conviction where only "portion of the

_____

[5] As noted, see note 3, supra, the statutory language codifying the first theory of mayhem dates to the beginning of the nineteenth century, with the current language in place since 1836. Nearly identical versions of the statute were enacted in at least ten other States and territories, and broadly similar statutes in others.

ear . . . was torn off").  Cf. Lamb v. Cree, 86 Nev. 179, 181 (1970) ("Under our law, biting off a portion of the ear is equivalent to a slitting of the ear").  See also LaFave, Substantive Criminal Law § 16.5(c) (2d ed. 2003) ("It has been held mayhem to cut off a part of an ear or a nose, so long as the net result is an impairment of natural comeliness").  We conclude that the judge did not err in denying the defendant's motion for a required finding.

3. Duplicative convictions.  Finally, the defendant argues that his conviction of assault and battery causing serious bodily injury should be vacated because it is a lesser included offense of mayhem.[6]  We have previously ruled that assault and battery by means of a dangerous weapon causing serious bodily injury is a lesser included offense of mayhem, second theory, but have not had occasion to address the precise question presented here.  See Commonwealth v. McPherson, 74 Mass. App. Ct. at 129.

To determine whether two convictions are duplicative, we apply the "long-prevailing test" that asks "whether each crime requires proof of an additional fact that the other does not." Commonwealth v. Crocker, 384 Mass. 353, 357 (1981).  We consider only the objective elements of each crime and not the facts of

---

[6] It is undisputed that both convictions are based on the defendant's biting Feliciano's ear.

any particular case.  Commonwealth v. Vick, 454 Mass. 418, 431 (2009).  "When statutory crimes can be violated in multiple ways, comparison of their elements must focus on the specific variations that the defendant is alleged to have committed." Commonwealth v. Roderiques, 462 Mass. 415, 421 (2012).

Applying these principles to the two criminal offenses at issue here, we agree with the defendant that his convictions are duplicative.  A conviction under G. L. c. 265, § 13A(b)(i), requires evidence of an assault and battery that causes serious bodily injury, which is defined as "bodily injury that results in a permanent disfigurement, loss or impairment of a bodily function, limb or organ, or a substantial risk of death."  G. L. c. 265, § 13A(c).[7]  While mayhem (first theory) contains an element -- specific intent to maim or disfigure -- that is not contained in assault and battery causing serious bodily injury, the converse is not true.  More specifically, the specified injuries to the body parts listed in the first part of the mayhem statute would necessarily constitute both an assault and battery and either "permanent disfigurement" or "loss or impairment" of a "limb or organ" under the "serious bodily

_____

[7] In Commonwealth v. Jean-Pierre, 65 Mass. App. Ct. at 167, we concluded that the term "permanent" in the assault and battery statute modified only "disfigurement."  Thus, "loss or impairment of a bodily function, limb or organ" need not be permanent to meet the statutory definition of serious bodily injury.

injury" provision.[8]  See G. L. c. 265, § 13A(c).  In other words, the Commonwealth could not prove that a defendant committed any of the enumerated offenses under the first branch of the mayhem statute without also proving that he committed an assault and battery causing serious bodily injury.  The conviction of the assault and battery charge therefore must be vacated.  See Commonwealth v. Rivas, 466 Mass. 184, 189 (2013) (when faced with duplicative convictions, "appellate courts have generally considered it appropriate to vacate the conviction on the offense with fewer elements and to affirm the conviction on the more serious offense without remand to the trial court" [quotations omitted]).

Conclusion.  For the reasons stated above, we affirm the mayhem conviction, but vacate the conviction of assault and battery causing serious bodily injury.

So ordered.

---

[8] At oral argument, the Commonwealth acknowledged that an ear is an "organ" for purposes of G. L. c. 265, § 13A(c).  This accords with the standard medical definition of that term.  See Stedman's Medical Dictionary 1378 (28th ed. 2006) (defining "organ" as "[a]ny part of the body exercising a specific function [e.g., respiration, secretion, or digestion]").