## COMMONWEALTH *vs.* OGDEN O., a juvenile.

Hampden. March 5, 2007. - April 17, 2007.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, & CORDY, JJ.

*Delinquent Child. Juvenile Court,* Delinquent child. *Mayhem. Intent. Evidence,* Juvenile delinquency, Intent. *Practice, Criminal,* Juvenile delinquency proceeding, Assistance of counsel, Lesser included offense. *Assault and Battery by Means of a Dangerous Weapon.*

The evidence at a proceeding to adjudicate the juvenile delinquent was sufficient to establish that the juvenile committed mayhem, where the jury could infer his specific intent to maim or disfigure from the juvenile's deliberate actions in wetting the victim with "dry gas" and then throwing a lighted piece of paper on the victim, causing the victim's trousers to catch on fire, and where the jury could reasonably believe that the extraordinarily dangerous nature of fire would not be lost on a ten year old boy [800-805]; further, the juvenile failed to establish that his counsel was ineffective in advancing the argument that the evidence was insufficient to prove that the juvenile intended to harm the victim [805-808].

Where the juvenile was adjudicated delinquent on a complaint charging him with mayhem (second theory), a complaint charging assault and battery by means of a dangerous weapon based on the same act was a lesser included offense, and therefore, this court vacated the adjudication of delinquency on the assault and battery charge and ordered that that complaint be dismissed. [808]

COMPLAINTS received and sworn to in the Hampden County Division of the Juvenile Court Department on June 19, 2003.

The cases were tried before *Patricia M. Dunbar,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Jeanne M. Kaiser* for the juvenile.

*Dianne M. Dillon,* Assistant District Attorney, for the Commonwealth.

*Barbara Kaban,* for Children's Law Center of Massachusetts & others, amici curiae, submitted a brief.

SPINA, J. Following a jury trial, the juvenile was adjudicated delinquent on complaints charging him with mayhem, in viola-

tion of G. L. c. 265, § 14, and with assault and battery by means of a dangerous weapon (flammable liquid), in violation of G. L. c. 265, § 15A. The juvenile was committed to the Department of Youth Services until February 11, 2008, but his sentence was suspended and he was ordered to comply with certain conditions. The juvenile appealed, and we transferred the case from the Appeals Court on our own motion. The juvenile now contends that (1) there was insufficient evidence to prove that he had the requisite specific intent to commit the crime of mayhem; and (2) he received ineffective assistance of counsel because his trial attorney did not present to the jury the issue of his lack of capacity to form the requisite specific intent. We affirm the adjudication of delinquency.[1]

1. *Background.* Viewing the evidence in the light most favorable to the Commonwealth, the jury could have found the following facts. See *Commonwealth* v. *Latimore*, 378 Mass. 671, 676-677 (1979). At the time of the events of June 1, 2003, the juvenile was ten years old. He was standing on the front porch of his home with a companion when the victim, who was nine years old, walked by and asked the juvenile if he had seen a particular friend. When the companion told him "No," the victim turned and started to walk away. The victim then felt some liquid on his left leg, and he told the juvenile and his companion to "stop wetting" him. The juvenile threw a flaming piece of paper on the victim, which landed on his leg, causing his trousers to ignite. The victim extinguished the fire by rolling on the ground and stamping it out with his hand. While this was happening, the juvenile was laughing at the victim and made no effort to help him. The victim was able to walk home, where his mother removed his trousers and saw that his skin was terribly burned. The victim's mother dialed 911, and he was transported to Baystate Medical Center by ambulance where he was hospitalized for almost two weeks. The victim continued to receive treatment for his burns for several months thereafter, and he now has a large scar on his lower leg. A fire fighter testified that the liquid thrown on the victim was "dry gas."

---

[1] We acknowledge the amicus brief filed by the Children's Law Center of Massachusetts, the Youth Advocacy Project of the Committee for Public Counsel Services, and the Criminal Justice Institute.

2. *Sufficiency of the evidence as to specific intent.* The juvenile first contends that there was insufficient evidence to prove that he acted with the specific intent to maim or disfigure the victim. The juvenile asserts that while his actions certainly were serious and harmful, they were not of a vicious and abhorrent nature, and they constituted a single isolated incident, not a prolonged attack. In the juvenile's view, this incident was a prank that went horribly awry. Moreover, the juvenile argues that because he was only ten years old at the time of the incident, he did not have the capacity to form the specific intent necessary to commit mayhem. Therefore, the juvenile continues, absent proof of specific intent, the finding of delinquency based on the charge of mayhem should be reversed. We disagree.

General Laws c. 265, § 14, sets forth two theories on which a charge of mayhem may be premised. Here, the jury adjudicated the juvenile delinquent based on the second theory, which provides that "whoever, with intent to maim or disfigure, assaults another person with a dangerous weapon, substance or chemical, and by such assault disfigures, cripples or inflicts serious or permanent physical injury upon such person . . . shall be punished." G. L. c. 265, § 14.[2] The two theories of mayhem "represent distinctive and independent bases of liability." *Commonwealth* v. *Hogan*, 7 Mass. App. Ct. 236, 246 n.11, *S.C.*, 379 Mass. 190 (1979).

Under Massachusetts case law, "[t]he mental state required for conviction of mayhem . . . is satisfied by direct or inferential proof that the assault was intentional, unjustified, and made with the reasonable appreciation on the assailant's part that a disabling or disfiguring injury would result." *Commonwealth* v. *Davis*, 10 Mass. App. Ct. 190, 196 (1980). Where the government lacks direct evidence of the requisite intent, as it often does, "[s]pecific intent may be inferred from the nature of the injuries as well as [from] evidence that 'the injuries arose from a sustained or atrocious attack.' " *Commonwealth* v.

---

[2]The first theory of mayhem, as set forth in G. L. c. 265, § 14, provides: "Whoever, with malicious intent to maim or disfigure, cuts out or maims the tongue, puts out or destroys an eye, cuts or tears off an ear, cuts, slits or mutilates the nose or lip, or cuts off or disables a limb or member, of another person . . . shall be punished . . . ."

*Sparks*, 42 Mass. App. Ct. 915, 916 (1997), quoting *Commonwealth* v. *Cleary*, 41 Mass. App. Ct. 214, 217 (1996). See *Commonwealth* v. *St. Pierre*, 377 Mass. 650, 651-653 (1979) (defendants slammed steel cell door against victim's arm numerous times); *Commonwealth* v. *Farrell*, 322 Mass. 606, 618-619 (1948) (defendant repeatedly slashed victim with razor blade and burned his initials into her skin); *Commonwealth* v. *Lazarovich*, 28 Mass. App. Ct. 147, 153-155 (1989) (defendant beat victim into unconsciousness, causing fractures, multiple contusions, and retinal hemorrhages); *Commonwealth* v. *Taghizadeh*, 28 Mass. App. Ct. 52, 58 & n.3 (1989) (defendant threw highly concentrated nitric acid in victim's face); *Commonwealth* v. *Tucceri*, 9 Mass. App. Ct. 844, 845 (1980) (defendant repeatedly rubbed handfuls of dirt into victim's eyes). A prolonged attack is not a necessary legal prerequisite to a finding of mayhem where a specific intent to maim or disfigure can be inferred from the circumstances of the attack and the severity of the inflicted injuries. See *Commonwealth* v. *Hap Lay*, 63 Mass. App. Ct. 27, 36 (2005). Contrast *Commonwealth* v. *Johnson*, 60 Mass. App. Ct. 243, 246-247 (2003) (evidence insufficient to support conviction of mayhem where entire attack lasted no more than ninety seconds, and injuries resulted from single strike to victim's head with beer bottle that was intact before impact); *Commonwealth* v. *Cleary*, *supra* at 217-218 (evidence insufficient to support conviction of mayhem where defendant struck victim in head once with bladeless axe handle in "spur of the moment" attack that did not evidence intention to disfigure victim).

We conclude that the evidence here, viewed in the light most favorable to the Commonwealth, was sufficient to establish that the juvenile committed mayhem. The jury could infer his specific intent to maim or disfigure from the circumstances of the incident and from the nature of the victim's injuries. Ignoring the victim's request that the juvenile "stop wetting" him, the juvenile proceeded to throw a lighted piece of paper on the victim, causing his trousers, then wet with dry gas, to catch on fire. The evidence did not support an inference that the juvenile accidentally set the victim on fire. Moreover, the juvenile's deliberate actions with the dry gas and the fire caused the kind

of disfiguring injury that was inevitable. The jury could reasonably believe that the extraordinarily dangerous nature of fire would not be lost on a ten year old boy. Nothing in the record suggests that the juvenile had any developmental handicaps or other disabilities that might have impaired his ability to perceive the common and severe risks associated with fire.

As counsel for the juvenile acknowledges, this court has never definitely resolved the issue whether, as under English common law, a child under the age of fourteen years is presumed to be incapable of committing particular crimes. In *Commonwealth* v. *Mead*, 10 Allen 398, 399-400 (1865), the court considered the legal competency of a child under twelve years of age to commit the offense of engaging in the unauthorized sale of intoxicating liquors. We stated that "[t]he rule of the [English] common law is perfectly well settled, that a child between the ages of seven and fourteen is not presumed to be doli capax,[3] and the question whether, in committing an offence, such child in fact acted with intelligence and capacity, and an understanding of the unlawful character of the act charged, is to be determined by the jury upon the evidence, and in view of all the circumstances attending the alleged criminal transaction." *Id.* at 399. The court concluded that the omission of instructions to the jury as to the legal competency of the child to commit the offense alleged in the indictment constituted error, necessitating a new trial. *Id.* at 400. Cf. *Commonwealth* v. *Trippi*, 268 Mass. 227, 231 (1929) ("the mere establishment of the fact that the defendant had a mental age of a child of thirteen would not entitle him to the benefit of the presumption that he was incapable of forming a criminal intent"). Subsequently, in *Commonwealth* v. *A Juvenile*, 399 Mass. 451, 452 (1987), we

---

[3]The term "doli capax" means "[c]apable of committing a crime or tort; esp., old enough to determine right from wrong." Black's Law Dictionary 521 (8th ed. 2004). As enunciated by the early English common law, "[i]n criminal cases, an infant of the age of fourteen years may be capitally punished for any capital offence: but under the age of seven he cannot. The period between seven and fourteen is subject to much uncertainty: for the infant shall, generally speaking, be judged prima facie innocent; yet if he was doli capax, and could discern between good and evil at the time of the offence committed, he may be convicted and undergo judgment and execution of death, though he hath not attained to years of puberty or discretion." 1 W. Blackstone, Commentaries 452-453 (1765).

explicitly recognized that "[u]nder English common law, a child under the age of fourteen was conclusively presumed incapable of committing rape," in all likelihood either because a boy who was not yet sexually mature could not commit the crime of rape, or because judges were reluctant to impose capital punishment on perpetrators who were so young. However, this court further stated that it had never directly decided whether such a presumption was applicable in the Commonwealth, and we concluded that, because it was not applicable to the facts in that case, the validity of the rule need not be considered. *Id.*

Historically, Massachusetts case law has not definitively recognized a presumption of incapacity, conclusive or rebuttable, based on the fact that the purported offender was under the age of fourteen years. See *Commonwealth* v. *Walter R.*, 414 Mass. 714, 716-717 (1993). Instead, the Commonwealth has developed a system, set forth by legislative enactment in G. L. c. 119, §§ 52-84, for dealing with delinquent children[4] in a manner that affords them greater protections than those afforded adults in the traditional criminal justice system. See *Commonwealth* v. *Walter R.*, *supra* at 718. See also R.L. Ireland, Juvenile Law § 1.3 (2d ed. 2006) (discussing philosophy of delinquency proceedings). This system has rendered a defense of incapacity based on youth, to the extent that it ever may have existed in the Commonwealth, inapplicable to current juvenile proceedings.

"The philosophical underpinnings of the juvenile justice system in this Commonwealth are revealed in the directive that statutes concerning delinquency proceedings 'shall be liberally construed so that the care, custody and discipline of the children brought before the court shall approximate as nearly as possible that which they should receive from their parents, and that, as far as practicable, they shall be treated, not as criminals, but as children in need of aid, encouragement and guidance.' " *Police Comm'r of Boston* v. *Municipal Court of the Dorchester Dist.*, 374 Mass. 640, 666 (1978), quoting G. L. c. 119, § 53. See *Metcalf* v. *Commonwealth*, 338 Mass. 648, 651 (1959) (legislative purposes of G. L. c. 119, §§ 52-63, are to correct and

---

[4]A "[d]elinquent child" is "a child between seven and seventeen who violates any city ordinance or town by-law or who commits any offence against a law of the commonwealth." G. L. c. 119, § 52.

redeem delinquent children). "Proceedings against children under [§§ 52-63] shall not be deemed criminal proceedings." G. L. c. 119, § 53. See *Department of Youth Servs. v. A Juvenile*, 384 Mass. 784, 786 (1981) (juvenile adjudication is not considered to be criminal conviction). The age of a juvenile "is a condition which entitles him to treatment deemed by the Legislature less onerous than that accorded to an adult under the criminal law." *Commonwealth v. A Juvenile*, 27 Mass. App. Ct. 78, 80 (1989).[5] This is because "[t]he law presumes different levels of responsibility for juveniles and adults and, realizing that juveniles frequently lack the capacity to appreciate the consequences of their actions, seeks to protect them from the possible consequences of their immaturity." *Commonwealth v. A Juvenile*, 389 Mass. 128, 132 (1983).

While a delinquent child may not have the maturity to appreciate fully the consequences of his wrongful actions, as has been explicitly recognized by our Legislature, that does not mean that a delinquent child lacks the ability to formulate the specific intent to commit particular wrongful acts. Contrary to the juvenile's suggestion, the Commonwealth was not obligated to present evidence to rebut a purported common-law presumption of incapacity based on youth where the manner in which delinquent children are to be treated has been defined comprehensively by the Legislature. The Commonwealth did have the burden to prove beyond a reasonable doubt that the juvenile had

---

[5]In recognition of the severity of certain crimes committed by juvenile offenders, the Massachusetts Legislature enacted comprehensive legislation in 1996 that amended the delinquency statute, G. L. c. 119, §§ 52-84, and other related statutory provisions. See St. 1996, c. 200 ("An Act to provide for the prosecution of violent juvenile offenders in the criminal courts of the Commonwealth"). As part of this 1996 enactment, the Legislature created a new category of juvenile delinquents known as "youthful offenders." See G. L. c. 119, § 52, as amended through St. 1996, c. 200, § 1. "Youthful offenders are those who, while between the ages of fourteen and seventeen years, commit acts that would be punishable by commitment to State prison if committed by adults and have previously been committed to the Department of Youth Services, or have committed offenses which 'involve[] the infliction or threat of serious bodily harm,' or commit firearms offenses. See G. L. c. 119, § 54, as amended through St. 1996, c. 200, § 2." *Commonwealth v. Clint C.*, 430 Mass. 219, 223 (1999). "Once a juvenile is treated as a youthful offender, he is no longer given the protections and privileges afforded to delinquent children." *Id.* See generally R.L. Ireland, Juvenile Law § 1.3 (2d ed. 2006).

formed the necessary intent to commit the offense with which he was charged. As we have already concluded, the Commonwealth satisfied its burden of proving that this juvenile acted with specific intent in committing the crime of mayhem.[6]

3. *Ineffective assistance of counsel.* The juvenile next contends that he received ineffective assistance of counsel because his trial attorney failed to present to the jury the issue of his capacity to form the specific intent to commit mayhem. He asserts that this was his sole ground of defense. The juvenile points out that his trial counsel never sought funds for a psychological examination that could have shed light on whether he truly understood the consequences of his actions.[7] Accordingly, the juvenile argues

---

[6]In appropriate circumstances, it might be possible for a particular juvenile to present expert testimony based on scientific evidence demonstrating that the juvenile was unable to form the specific intent to commit a crime because of a mental deficiency, brain injury, or the like. In those circumstances, the scientific evidence would need to satisfy the standard set forth in *Commonwealth* v. *Lanigan*, 419 Mass. 15, 25-26 (1994). See *Canavan's Case*, 432 Mass. 304, 313-316 (2000) (concluding that expert testimony concerning medical diagnosis and causation should be subject to *Lanigan* analysis). More generally, as to evidence that children between the ages of seven and fourteen years are incapable of committing criminal acts because of insufficient brain development, we point out that "respect for the legislative process means that it is not the province of the court to sit and weigh conflicting evidence supporting or opposing a legislative enactment." *Massachusetts Fed'n of Teachers, AFT, AFL-CIO* v. *Board of Educ.*, 436 Mass. 763, 772 (2002), quoting *Borden, Inc.* v. *Commissioner of Pub. Health*, 388 Mass. 707, 723, cert. denied sub nom. *Formaldehyde Inst., Inc.* v. *Frechette*, 464 U.S. 936 (1983). The pertinent legislative enactments here are those statutory provisions dealing with delinquent children, see G. L. c. 119, §§ 52-84, whom the Legislature has already recognized should be treated differently from adults.

[7]In anticipation of the filing of a motion for a new trial, appellate counsel filed a motion in the Juvenile Court on June 7, 2005, for funds to obtain expert testimony regarding the juvenile's capacity to form the specific intent necessary to commit mayhem. The motion was denied. On appeal, a judge in the Superior Court determined that the Juvenile Court judge had erred in concluding that she did not have the authority to authorize costs associated with the preparation of a new trial motion pursuant to Mass. R. Crim. P. 30 (c) (5), as appearing in 435 Mass. 1501 (2001). The Superior Court judge vacated the order denying the juvenile's motion for funds and remanded the matter to the Juvenile Court for further consideration. It appears that appellate counsel filed her notice of appeal from the denial of funds in the Superior Court in the mistaken belief that the appeal should proceed under G. L. c. 261, § 27D, which provides that an appeal from the denial of a motion for costs in the Juvenile Court should be filed in the Superior Court. Notwithstanding this

that he is entitled to a new trial with respect to the charge of mayhem. We disagree.

It is well established that in order to prevail on a claim of ineffectiveness of counsel, a defendant must show that (1) counsel's conduct fell "measurably below that which might be expected from an ordinary fallible lawyer"; and (2) this conduct "likely deprived the defendant of an otherwise available, substantial ground of defence." *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974). With respect to the second prong of this test, we have stated that "there ought to be some showing that better work might have accomplished something material for the defense." *Commonwealth* v. *Satterfield*, 373 Mass. 109, 115 (1977). See *Commonwealth* v. *Phinney*, 446 Mass. 155, 162 (2006). We avoid a conclusion that there has been ineffective assistance where "the basic trouble from the defense standpoint was weaknesses in the facts rather than any inadequacy of counsel." *Commonwealth* v. *Satterfield*, *supra* at 111. A strategic or tactical decision by counsel will not be considered ineffective assistance unless that decision was "manifestly unreasonable" when made. *Commonwealth* v. *Adams*, 374 Mass. 722, 728 (1978). See *Commonwealth* v. *Murphy*, 442 Mass. 485, 500 (2004). This standard for determining whether there has been ineffective assistance of counsel is the same for both adult criminal trials and juvenile proceedings. See *Commonwealth* v. *Ike I.*, 53 Mass. App. Ct. 907, 908 (2002). The burden is on the juvenile to prove both prongs of the *Saferian* test. Cf. *Commonwealth* v. *Peloquin*, 437 Mass. 204, 210 (2002).

We agree with the Commonwealth that the juvenile has failed to establish that his trial counsel's conduct fell measurably below that of an ordinary fallible lawyer or that better work would have accomplished something material for the defense. The juvenile was given a competency evaluation by a forensic psychologist with the Hampden County Juvenile Court clinic prior to trial, in February, 2004, and he was found to be competent. Appellate counsel has cited nothing in that evalua-

error, once the matter was remanded to the Juvenile Court for further consideration, the juvenile's motion for funds was again denied. The juvenile acknowledges that the utility of a psychological examination at this late date would be limited because of the passage of time since the incident, which occurred on June 1, 2003.

tion, or anywhere in the record, that should have alerted trial counsel to any deficiency in this particular juvenile's mental status that would have hindered his ability to form the specific intent to commit mayhem. Appellate counsel's theory that expert testimony was essential to show that a ten year old boy does not have the capacity to understand the consequences of his actions is unavailing. As we have stated, the underpinnings of our juvenile justice system already are based on the very principle that juveniles frequently lack the capacity to appreciate the consequences of their actions and, therefore, should be afforded greater protections than adults. Expert testimony would have added little new in this regard.[8] The evidence presented to the jury, particularly the victim's testimony, simply did not support an inference that the juvenile did not specifically intend to throw a flaming paper on the victim, causing him to suffer a disfiguring injury.

The judge instructed the jury that the Commonwealth had the burden to prove beyond a reasonable doubt the charges against the juvenile. With respect to the charge of mayhem, the jury were properly instructed that they could find the juvenile delinquent only on proof that he had acted with the specific intent to maim or disfigure the victim. Juries are presumed to follow such instructions. *Commonwealth* v. *Auclair*, 444 Mass. 348, 360 (2005). While the performance of the juvenile's trial attorney may have been underwhelming, he did attempt to

---

[8]We have opined that a claim of ineffective assistance of counsel raised on direct appeal, rather than through a motion for a new trial, is a claim "in its 'weakest form' because 'it is bereft of any explanation by trial counsel for his actions and suggestive of strategy contrived by a defendant viewing the case with hindsight.' " *Commonwealth* v. *Diaz*, *ante* 286, 289 (2007), quoting *Commonwealth* v. *Peloquin*, 437 Mass. 204, 210 n.5 (2002). Only in exceptional circumstances will an appellate court be able to resolve an ineffective assistance claim on direct appeal, where the factual basis for such a claim is indisputable from the trial record. See *Commonwealth* v. *Diaz*, *supra.* In support of her argument that the juvenile lacked the capacity to form the specific intent necessary to commit mayhem, appellate counsel relies, in part, on recent scientific studies that purport to show that brain development plays a crucial role in a child's ability to understand the consequences of his actions. These studies were not part of the record before the Juvenile Court. Moreover, they do not address the mental capacities or deficiencies of this particular juvenile. As such, even if these scientific studies had been introduced by trial counsel, they would have had a negligible effect on the current proceedings.

impress on the jury his argument that the evidence was insufficient to prove beyond a reasonable doubt that the juvenile intended to harm the victim. We are not persuaded that better work would have accomplished something material for the defense. When viewed in its totality, we conclude that the performance by trial counsel did not constitute ineffective assistance.

4. *Lesser included offense.* At oral argument, the Commonwealth pointed out that the charge of assault and battery by means of a dangerous weapon, which constituted one of the two bases for the adjudication of delinquency, was a lesser included offense of mayhem. We agree.

"A crime is a lesser-included offense of another crime if each of its elements is also an element of the other crime." *Commonwealth* v. *Perry*, 391 Mass. 808, 813 (1984). "Mayhem (second theory) is essentially an assault and battery by means of a dangerous weapon, with the additional aggravating factors of a specific intent to maim or disfigure, and certain forms of resultant physical injury." *Commonwealth* v. *Martin*, 425 Mass. 718, 722 (1997). The two offenses here were based on a single act by the juvenile. See *Commonwealth* v. *Thomas*, 401 Mass. 109, 120 (1987). Therefore, the assault and battery by means of a dangerous weapon was a lesser included offense of mayhem (second theory). See *Commonwealth* v. *Martin, supra.* "The appropriate remedy for the imposition of duplicative convictions is to vacate both the conviction and sentence on the lesser included offense, and to affirm the conviction on the more serious offense." *Commonwealth* v. *Mello*, 420 Mass. 375, 398 (1995).

5. *Conclusion.* The adjudication of delinquency on the charge of mayhem is affirmed. The adjudication of delinquency on the charge of assault and battery by means of a dangerous weapon is vacated and that complaint is dismissed.

*So ordered.*