NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

25-P-425

COMMONWEALTH

vs.

AMRITH A. MAHARAJH.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

After a jury-waived trial, on an indictment charging aggravated assault and battery, a Superior Court judge found the defendant guilty of the lesser included offense of assault and battery.  The judge also found the defendant guilty of mayhem and assault and battery on a household member.  On appeal, the defendant claims that there was insufficient evidence of mayhem, and that the judge abused his discretion by admitting evidence of the defendant's prior bad acts.  We affirm.

1.  Sufficiency of evidence.  The defendant was convicted under the second branch of the mayhem statute, G. L. c. 265,

§ 14,[1] for using a kitchen knife to cut the victim's neck, leaving a scar. The defendant claims that there was insufficient evidence to support his mayhem conviction where the Commonwealth's evidence failed to establish that he had the specific intent to maim or disfigure the victim. Based on the evidence presented, we disagree.

When analyzing whether the record evidence is sufficient to support a conviction, an appellate court is not required to "ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt." Commonwealth v. Hartnett, 72 Mass. App. Ct. 467, 475 (2008), quoting Commonwealth v. Velasquez, 48 Mass. App. Ct. 147, 152 (1999). Nor are we obligated to "reread the record from a [defendant]'s perspective." Palmariello v. Superintendent of M.C.I. Norfolk, 873 F.2d 491, 493 (1st Cir.), cert. denied, 493 U.S. 865 (1989). See Commonwealth v. Duncan, 71 Mass. App. Ct. 150, 152 (2008). Rather, the relevant "question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements

---

[1] The second branch of the mayhem statute states "whoever, with intent to maim or disfigure, assaults another person with a dangerous weapon, substance or chemical, and by such assault disfigures, cripples or inflicts serious or permanent physical injury upon such person . . . shall be punished." G. L. c. 265, § 14. See Commonwealth v. Martin, 425 Mass. 718, 721-722 (1997).

2

of the crime beyond a reasonable doubt." Commonwealth v. Latimore, 378 Mass. 671, 677 (1979), quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979).

The mental state required to support a mayhem conviction "is satisfied by direct or inferential proof that the assault was intentional, unjustified, and made with the reasonable appreciation on the assailant's part that a disabling or disfiguring injury would result." Commonwealth v. Ogden O., 448 Mass. 798, 800 (2007), quoting Commonwealth v. Davis, 10 Mass. App. Ct. 190, 196 (1980). "[S]pecific intent may . . . be inferred from the severity and extent of the [victim's] injuries" (quotation omitted). Commonwealth v. Forbes, 86 Mass. App. Ct. 197, 199 (2014). It may also be inferred from evidence that "the injuries arose from a sustained or atrocious attack" (quotation and citation omitted). Ogden O., supra. The evidence here met these standards.

In the light most favorable to the Commonwealth, evidence showed that the defendant was "controlling," "possessive," and "violent[]" and repeatedly subjected the victim to unwanted sex. She described the situation not as "a relationship" but as "a deal": "Like, he would go to work, come home every day, and I would stay home, take care of the children, cook, clean and he would use my body whenever he desired." He took her phone, set up a surveillance camera to monitor her when he was not home,

3

and limited her contact with her mother, siblings, and friends. When the defendant was "home and awake," the victim was not allowed to leave the apartment. On one occasion, she tried to leave, the defendant chased after her, and shoved her into a parked car and onto the ground.

On the day in question, in March 2020, the victim was six months pregnant and showing, and the defendant was aware of her pregnancy. She was in her kitchen, cleaning; she was not feeling well, had cramps and a backache, and she was tired. The defendant entered the kitchen and told the victim he wanted to have sex; she did not. She told the defendant "no" and explained that she was "having stomach cramps [and] belly pains," but he paid her no heed. The defendant "coaxed" her to a bed in the living room, "pushed [her] down," and "put all of his weight on [her]." She kicked her legs and flailed her arms in an attempt to get him off of her. In the process, she accidently kicked the defendant in his genitals. Angered, the defendant went to the kitchen where he retrieved a knife.[2] In the meantime, the victim, crying for her mother, ran for the apartment door attempting to flee to her mother's home. He stopped her at the door, "yanked" her neck back by her braided hair, and drew the knife across her neck. The knife "sliced" or

_____

[2] The knife was a "kitchen knife" the victim used to cut vegetables.

4

"slashed" her skin and drew blood. While the victim cried in a state of shock, the defendant called her a "bitch" and spit on her. She wanted to call the police, but the defendant threatened to "[f]'n finish it off" if she did. The victim did not go to the hospital and bandaged the wound herself. The bleeding eventually stopped, and the wound left a lasting, visible scar. Her mother later noticed the scar, but the victim avoided discussing it. Three years later, the scar remained visible and unchanged at trial. The victim "see[s] it every day in the mirror."

This evidence belies the defense contention that the attack occurred in the "spur of the moment," i.e., not a sustained attack, which is generally insufficient to support a conviction of mayhem, absent a defendant's particularly "heinous" conduct. Commonwealth v. Cleary, 41 Mass. App. Ct. 214, 218 (1996) (single blow to face with bladeless axe handle insufficient to support mayhem conviction where evidence showed defendant acted in spur of moment after victim kicked his car). See Commonwealth v. Johnson, 60 Mass. App. Ct. 243, 246-247 (2003) (beer bottle broken over victim's head insufficient evidence of specific intent to maim in part because injuries were product of single blow during fight). The victim, stating that she did not feel well, wanted to be left alone, but the defendant attempted sex against her will and became enraged when she resisted and

5

kicked him. She cried for her mother and attempted to flee the apartment, but the defendant stopped her and carefully sliced her neck without damaging vital structures beneath the skin. When viewing the totality of this evidence, a fact finder could reasonably conclude that the knife wound (and accompanying demeaning comment, threat, and spitting) was specifically intended as a lasting and tangible message to the victim -- that he controlled her and that her continued refusal to submit to his will would result in physical injury or death. We have examined the photographic evidence and note that the scar is significant and spans horizontally from the front midline of the victim's neck to the side. Unlike the line of cases cited by the defendant where specific intent was in doubt because the perpetrator "caused a more severe injury than anticipated," Commonwealth v. McPherson, 74 Mass. App. Ct. 125, 128-129 (2009), the injury here could be seen as inflicted with precisely the surgical precision needed to send the message intended by the defendant. "A prolonged attack is not a necessary legal prerequisite to a finding of mayhem where a specific intent to maim or disfigure can be inferred from the circumstances of the attack and the severity of the inflicted injuries." Ogden O., 448 Mass. at 801.

Apart from the sustained attack shedding light on the defendant's specific intent, the victim's injury, while not as

6

grievous as found in other cases, see McPherson, 74 Mass. App. Ct. at 126 (damage to bridge of nose and eyes); Commonwealth v. Hap Lay, 63 Mass. App. Ct. 27, 30 (2005) (damage to brain); Commonwealth v. Mercado, 24 Mass. App. Ct. 391, 393-395 (1987) (multiple lacerations and fractures to face and head), could be viewed as a serious and even permanent disfiguration.  See Commonwealth v. Tavares, 61 Mass. App. Ct. 385, 390-391 (2004) (serious and permanent injury may be inferred from "tiny line of bruising extending from the front of the finger underneath the nail bed" on each finger of child).  Her mother readily noticed the scar, the scar remained visible three years after the attack, and the victim "see[s] it every day in the mirror." Thus, the Commonwealth presented sufficient evidence to submit the case to the fact finder.  See Latimore, 378 Mass. at 677.

2.  Prior bad acts evidence.  The defendant also claims that the judge abused his discretion by permitting the Commonwealth to admit numerous incidents of the defendant's prior bad acts.  We disagree.

A defendant's prior bad acts are not admissible to show a defendant's bad character or propensity to commit the crime charged.  See Commonwealth v. Almeida, 479 Mass. 562, 568 (2018); Commonwealth v. Mullane, 445 Mass. 702, 708-709 (2006). Such evidence may, however, be admissible to "establish motive, opportunity, intent, preparation, plan, knowledge, identity, or

7

pattern of operation" (citation omitted). Almeida, supra. See

Mass. G. Evid. § 404(b)(2) (2026). It may also be admissible to

prove a witness's state of mind or bias. See Commonwealth v.

Monico, 396 Mass. 793, 807 (1986). However, such evidence will

not be admitted if its probative value is outweighed by the risk

of unfair prejudice to the defendant. See Commonwealth v.

Crayton, 470 Mass. 228, 249 (2014).

Most of the complained of bad acts involved the defendant's

strained relationship with his landlord, including threats the

defendant made, nonpayment of rent, parking issues, the

defendant being "rude" and "angry," as well as the landlord

obtaining a "restraining order" against the defendant.[3] The

defendant objected to some of this evidence, but not because it

was prior bad act evidence, but rather on grounds of relevance

and for a lack of a proper foundation being laid. Sua sponte,

the judge put on the record that he was admitting this evidence

> "not for propensity, but just in regard[] to the
> relationship that th[e] witness has had with the defendant.
> So[,] it's not going in for propensity, but I think it's
> relevant as to her testimony, her bias, perhaps, and
> motive. So that's why I'm allowing that in, not for
> propensity as to -- or bad character, okay?"

Because the defendant failed to object or objected on

different grounds than raised on appeal, we review to determine

---

[3] In fact, one of these bad acts was elicited on cross-examination by defense counsel.

8

if the judge abused his discretion, and if so, whether it created a substantial risk of a miscarriage of justice. See Commonwealth v. Randolph, 438 Mass. 290, 293-296 (2002). Here, the judge correctly stated the law and properly admitted the evidence. See Almeida, 479 Mass. at 568; Mullane, 445 Mass. at 708-709. There was no abuse of discretion, and thus, no risk that justice miscarried.

The defendant also claims it was improper to permit the victim to testify that on one occasion when she tried to leave the house, the defendant chased and pushed her, causing her to fall and cry. To this testimony, the defendant objected on the ground that it was improper prior bad act evidence. Later, without objection, the victim testified that the defendant would not let her breast feed her daughter and kicked her off the bed. After the first question, the judge explained that because this case involved domestic violence, the victim's testimony was admissible to show the hostile nature of her relationship with the defendant.

Here, the judge again properly stated the law and the evidence of the defendant's prior bad acts was relevant to show "the hostile nature of the relationship between [the] victim and [the] defendant."[4] Commonwealth v. Miller, 475 Mass. 212, 229

_____

[4] The defendant also takes issue with the landlord's sister testifying, without objection, that she overheard arguments

9

(2016).  See Commonwealth v. Butler, 445 Mass. 568, 575 (2005);
Commonwealth v. Oliveira, 74 Mass. App. Ct. 49, 54 (2009).
Accordingly, the judge did not abuse his discretion by admitting
this evidence.  There was also no risk that any prejudicial
effect of both groups of acts outweighed their probative value.
In general, this risk is low in a jury-waived trial, because the
judge is presumed to have applied correct principles of law and
not to have relied on evidence for an improper purpose.[5]  See
Commonwealth v. Milo M., 433 Mass. 149, 152 (2001).  In this
case, we need not indulge the presumption as the judge expressly
stated on the record the correct use of the evidence.

Judgements affirmed.

By the Court (Meade,
 Hodgens & Allen, JJ.[6]),

Clerk

Entered:  May 15, 2026.

---

between the defendant and the victim, and that during one
argument, she heard the victim "screaming" and calling the
defendant a "liar."  Such testimony was also admissible to show
the hostile relationship between the defendant and the victim.

   [5] The defendant's reliance on Commonwealth v. Dwyer, 448
Mass. 122, 128 (2006), is inapposite, where that case involved a
jury trial.

   [6] The panelists are listed in order of seniority.